**Jason KELLER, Plaintiff,**

v.

**Larry MacCUBBIN, et al., Defendants.**

**C.A. No: 11C–03–015 (RBY).**

Superior Court of Delaware,
Kent County.

Submitted: Feb. 5, 2013.
Decided: Feb. 11, 2013.

Thomas C. Crumplar, Esq., Jacobs & Crumplar, P.A., Wilmington, Delaware and Stephen Neuberger, Esq., The Neuberger Firm, Wilmington, Delaware for Plaintiff.

Roger D. Landon, Esq., and Kelley M. Huff, Esq. Murphy & Landon, Wilmington, Delaware for Defendants.

### OPINION

YOUNG, J.

### SYNOPSIS

Plaintiff has filed a Motion for Reargument addressed to the prior Order of this Court dated January 3, 2013. The Motion requests the Court to "reconsider" that Order, meaning to reach a different conclusion from that rendered in that Order.

The Motion specifically addresses three notions. One, Plaintiff notes a reference in the Order to the Diagnostic and Statistical Manual of Mental Disorders (DSM) as a publication which is not "peer reviewed." Next, Plaintiff believes that a confusion between "suppression" and "repression" occurred. Finally, Plaintiff claims that reference to Plaintiff's confrontation with police as a "trauma" was misplaced.

Plaintiff's characterization of each of those as erroneous is not well-taken. More significantly none of the three—even if incorrectly phrased—had bearing on the prior Order.

For those reasons, Plaintiff's Motion is **DENIED.**

### DISCUSSION

A great deal has been made of the description of DSM as not being "peer reviewed." Counsel do not grasp the meaning of the phrase. "Peer reviewed," in scientific parlance, is not something that groups of people—even very large groups of very learned people—convene as a committee to reach accord upon, reduce to writing, and as a committee publish. It is an academic phrase meaning something that was written, by one or any number of people, and then sent to a professional journal, where it is submitted to a group of experts selected by the publisher (not by the—even august—group itself). It is, in other words, a term of art, not an evaluation. Parenthetically, the immediate past chief editor of DSM has refused to be listed in the most recent version because of student disagreement with various areas. Hence, the DSM itself may represent "the best consensus," but it hardly reflects anything approaching unanimity. All of that, however, is purely syntactical for our purposes, and of no consequence.

The point, though, is that DSM and the other materials referenced deal, at best, only marginally and tangentially with the timing of any repression. None has been shown to establish, with sufficient reliability to expost to a jury, that the point of repression can be determined. It is on that basis, described at length in the prior decision, that this proffered testimony will not be admitted.

Turning to Plaintiff's suggestion that the prior Order confused "suppression" with "repression," it could be noted specifically that (T: p.106 l.23) Dr. Tavani was asked if there were "some conscious *suppression* of the memory that eventually *turned into* traumatic amnesia," to which she responded, "Yes." Moreover, while stating emphatically that dissociative amnesia is not just normal forgetting, it is a different process (T: p.28 l.7 & p. 196 l.6), at other times she discussed Plaintiff's condition in a manner interchanging those two "different" mechanisms. For example she said: "whether he *forgot* instantly or ..." (T: p.104 l.12); and "a certain percentage of people who *forget*, who *have this* traumatic dissociative amnesia ..." (T: p.79 l.11); and, most expressly, "I think he *forgot* within that window ..." (T: p.105 l.10) (all emphasis added).

The fact is that distinctions attempted to be drawn clearly at one time or another frequently blurred or interchanged among "repression," "suppression," and "forgetting" throughout the entirety of the testimony.

Again, however, the point is that those niceties are not consequential. The ultimate import is that, as previously described, there is not sufficient scientific foundation to permit opinion testimony as to time of repression.

Finally, Plaintiff refers to the Court's misunderstanding of "the trauma." Two events considered disturbing to Plaintiff were referred to throughout. One, the sexual actions, assumed for purposes of this proceeding to have occurred. The other the police confrontation. No one disputes that, if it did take place as Plaintiff now "recalls," the rape would have been a traumatic event. Yet the concern of this hearing, which is to examine a proffered opinion as to timing (because we are discussing only the possible expiration of the applicable statute of limitations),

does not turn on a minute-hour-day distinction between two events presumably taking place within a fortnight of each other. That being said, though, the testimony was repleat with the thought that Plaintiff was, in the very least, disquieted by the appearance to him of the police on the boardwalk. It was that recognition by Plaintiff which, according to the testimony of Dr. Tavani, set in motion the "here-are-the-police-they-know-I'm-wanted-I'll-get-arrested-and end-up-at-Ferris-school-which-is-a-very-troubling-thought" chain. That stream of conscious ideation, it was proffered by Dr. Tavani, may have caused the repression—or it may have been the sexual event itself. Either event, it was posited, would have brought about repression. Now, whether one considers one a trauma and the other a shock or a concern or a superceding event or a trauma is of no consequence.

At the risk of being repetitive, that phraseology is of no moment. Plaintiff's expert cannot establish, on reasonably scientific bases, the timing of any memory repression. Ultimately, she states that, in her opinion, whether the repression occurred at the time of the sexual assault or at the time of the police confrontation—and she is not able to distinguish between them for a definitive placement of timing-the repression occurred in that "window of time." That is her opinion. She made that clear. Yet, her experience in treating victims of repression and the various references (DSM or treatise) fail to establish sufficient scientific foundation, on the topic of timing of on-set of repression, to be admissible as opinion evidence to a jury.

The entire matter of memory and its duration or ephemeral nature is fraught with problems of precision, as the testimony of Dr. Tavani and Dr. Toborowski and DSM and all the referenced treatises note. Friedrich Nietzsche (a philosopher, neither a psychologist nor a peer reviewer) said: "The existence of forgetting has never been proved: we only know that some things don't come to mind when we want them." A hundred and twenty-five years later, we may not be much further along.

Be that as it may, Plaintiff's Motion for Reargument does not alter the consideration by the Court set out in the decision of January 3, 2013.

Plaintiff's Motion is, therefore, **DENIED**.

**SO ORDERED** this 11th day of February, 2013.